Haynes, J,
In this matter of John Arbuckle and others against the Woolson Spice Company and others, motion for parties to show cause why they should not be punished as for contempt of court. The motion has been argued very extensively on both sides and covered the whole ground. It has seemed to us that in announcing our opinion this morning, it would be very proper for us, although perhaps not necessary, to state a little more at length than we did in our opinion upon the original motion to permit the parties to examine the books (ante, p, 348), and a little more fully the grounds upon which we are proceeding in this matter and what I may term a prima facie view that we take of the case upon the pleadings, and the evidence upon the original motion.
*359 The action is in the nature of a petition in chancery. It is an action that sets up in three or four causes of action different matters, and it sets up in the first cause of action the fact that these plaintiffs are the owners of sixty-three shares of stock of the Woolson Spice Company and that the company refuses to transfer this stock upon the books of the company to these plaintiffs and asks for an order to compel the defendant company to make that transfer and an order permitting the parties who sold the stock and in whose names it stands upon the books of the company to make the transfer. The second cause of action asks that the parties have an order that they may be permitted at proper times and places, as members of the corporation, to examine the books of the company. The third and fourth causes of action are more voluminous, as are the answers to them, but the substance of all those causes of action is, substantially: that in 1896, in December, the stock of the company consisted of about eighteen hundred shares; that seventeen hundred and forty of these shares were transferred to Havemeyer and his associates, and they are now the owners and holders thereof. The petition alleges that the Woolson Spice Company sold the entire number of shares, seventeen hundred and thirty-nine, “and transferred the same to Havemeyer and others, his associates,” whose names are to plaintiffs unknown,but all of whom,and also the said Havemeyer, then were and still are, as plaintiffs are informed and believe, non residents of Ohio. Said Havemeyer and his associates then became, ever since have been, and now are, the holders of record of all the stock of said company, except the sixty-one shares owned by plaintiffs unless the defendants, Secor and Doyle, and others to plaintiffs unknown have, that they may appear od the books of said company qualified to act as directors thereof, been registered as holders of one share each of said stock.”
They then aver that the defendant company has been controlled by these shares of stock, through, its officers and agents,and that the plaintiffs have been excluded from any participation in the control or management of said company.
• The substance of this is that during the four years that have transpired since the purchase of the stock by these parties in 1896, that this company, which prior to that time *360 had done a very profitable business, and bad been paying very large dividends, and had, for the nine months prior to the sale of that stock made dividends nearly equal to the face value of the stock, that this company has since that time, and from that time to this, utterly failed to make any dividends whatever upon the stock of the company. And they make averment upon knowledge and belief that the company is using the earnings of the defendant company for purposes of its own, or expending them in such manner that it is depriving these parties of any income or benefit from the workings of the said company.
They make various allegations in regard to that matter of more or less length, and wind up with a prayer that “The defendant, The Woolson Spice Company, its officers and agents, as well as the other defendants herein, be enjoined and required by appropriate process: (1)' to tranfer to plaintiffs upon the books of said company the said shares of stock so owned by plaintiffs,or to permit the transfer thereon by the vendors thereof, or their authorized attorneys in fact; (2) to issue and deliver to plaintiffs certificates for their said shares of stock; (3) to accord to plaintiffs the right,in person and by attorney in fact,to inspect the books and records of the defendant company, and to take copies therefrom, and to fix reasonable times for such inspection; (4) to accord to plaintiffs all other rights whatsoever to which, as stockholders of said corporation, they may be entitled;^) from conducting its business in the manner it has done in the three years last past; (6) from selling its products at such prices as will entail a loss upon its shareholders or deprive them of the dividends to which they would otherwise be justly entitled, or at less than the fair value thereof in the open market; (7) from conducting its business in any manner other than the equal pro rata benefit of the owners of its capital stock; and (8) from conducting business in the interests of persons or corporations, other than its shareholders, or for the purpose of injuring the plaintiffs, as shareholders or otherwise.
“Plaintiffs further pray that all the directors and officers of said company, and all its registered stockholders, and all persons and corporations actually owning any of its capital stock be ascertained and determined; that an account be *361 taken of the state, condition, business affairs and management of the defendant company and of its profits and losses* and of the disposition made of its gains, if any, to the end that any surplus earnings available as dividends may be ordered paid to its stockholders; that an accounting may be had as to the loss and damage suffered by the defendant company and plaintiffs by reason oí the reduction in the price of its product and the loss and diversion of its assets and income; that a master be appointed to take and state such accounts; that all of the defendants found liable therefor be decreed to pay the same; and that a receiver be appointed to take charge of the property and business of the defendant company and conduct the same for the equal pro rata benefit of all its shareholders, to convert its assets into money, and pay its debts and divide the surplus, if any, among the owners of its capital stock. And plaintiffs pray for such other and further relief as may be equitable and just.”
The answer, after making sundry admissions, denies all the other allegations of the petition,practically denying the-ownership of this stock by these plaintiffs. However, further on in the answer the statement is made that large sums’ of money, to-wit, about one hundred thousand dollars, has been paid by plaintiffs to a certain party for his stock, so that they might control this stock of the company, The answer is quite lengthy and sets up, after making these denials, that these parties have purchased this stock for the purpose of interfering with and injuring the defendant; that is to say, that the Arbuckle Brothers are the owners and partners in business of the principal coffee-roasting institution in the United States, and are carrying on the business-of roasting coffee, being the same business that is carried on by these defendants; and they aver, with many particularities, that they are rivals in business of this concern, and that the purchase of this stock has been made by these-plaintiffs in order that they may interrupt and interfere with the carrying on of the business of this defendant company, because it is injurious to the interests of the Arbuckle Brothers, to have the defendant company carry on its business. They also allege at some length that combinations have-been made throughout the United States, by the plaintiffs-whereby the defendant company has been prevented from *362 entering into certain states, territories and countries for the sale of its goods, and that in various ways the Arkbuekle Brothers are seeking to harass, oppress and deprive these defendants of the benefits of the business that they are carrying on,
The case came on for hearing in the court of common pleas, before Judge Pugsley and a decree was entered, in which it was found that the plaintiffs were the owners of these sixtv-three shares of stock in question, and it was ordered that the stock be transferred upon the books of the company to them, and that they should be permitted to have an examination of the books of tbe company, with perhaps some restrictions. As to the third and fourth causes of action the decree was against the plaintiffs. The matter was then brought into this court.
In common pleas an injunction was granted by decree restraining the defendant company from refusing to transfer the stock, and after it came into this court a motion was made to suspend that order, which was argued to the court at the time; upon hearing of that motion and consideration of it, the court partly for the reason that it seemed to think that the first cause of action in the petition, was in the nature of a decree for specific performance, because title and ownership were denied, and partly because counsel for the defendants were very urgent that they desired to take the case to the supreme court, for the purpose, if practicable, of getting a modification of a certain decision that had been made by that court, the order was by us suspended.
Subsequently an application was made under section 5290, Revised Statute, for an order of court allowing an inspection of'the books of the defendant company for the purpose of procuring evidence for the hearing in this court upon the final trial of the case, and especially and more particularly perhaps upon the third and fourth causes of action. After hearing the arguments in that case, an order was made by this court that an inspection be had, under certain restrictions that were stated in the order. Subsequently a motion was made to this court, which is the motion now being considered, for an order upon these defendants to show cause why they should not be punished as for contempt, for refusing to obey the order that was made by the court.
Upon the hearing of the first motion, we made an exami *363 nation of the case as to the apparent rights of the parties, under the law of the land, in maintaining this suit, and maintaining these various causes of action, (supra.) A leading case which we had, and upon which we relied, was the case of Iron Railroad Co. v. Fink, 41 Ohio St. 821. The case was decided at the January term, 1884, In that case the railroad had been organized about the year 1849, in Lawrence county, this state, at Ironton. A certain party had taken stock to the amount of four thousand dollars. He paid upon installments, as called for, something like three thousand dollars upon the stock, and died. He left a will in which he made disposition of his property, and thereby made his son a residuary legatee of his estate. The matter passed into the hands of administrators; they were changed two or three times, and the matter ran along until some time in 1864. The road at that time was not paying very well and no dividends were declared. No call was made upon the administrators for the payment of any further amount upon the stock; but along about 1864, the road began to be profitable, and I think' after that some little payment was made upon the stock; at any rate, upon the winding up of the estate the stock was transferred to the son, and the son sold and transferred his rights in the stock to a party by the name of Fink, who in about the year 1873, finally made a tender of the amount that was due on the stock to the company, and demanded that the stock should be issued to him as the purchaser and owner, He had previously made some inquiries of the officers of the company as to the stock, and upon which inquiries and information he relied, Finally when he made this demand on February 25, 1873, the company refused to deliver the stock or issue certificates therefor. And thereupon on December 31, of that year, suit was brought to compel the transfer of the stock. That case was heard in the court of common pleas and judgment rendered for the defendant company, and the matter then went by appeal to the district court, and there an amended petition was filed with a prayer for relief,which was quite lengthy, in which they set up and prayed that there may be an accounting for the gains and profits of the company and an accounting of all the dividends, and for the increase and gains of stock. It seemed that some stock had been issued or may have been issued, that the party might *364 be entitled to as stockholder, arising out of dividends on-stock from the profits and from various other matters, and-thereupon the court, upon the hearing, found in favor of" the plaintiffs in regard to the transfer of the stock; finding-that he had a right to have it transferred, and sent the matter out to a referee,with an order to ascertain the amount’ remaining unpaid on these shares, the amount of cash dividends, the amount of stock dividends, and the amount of shares and cash dividends, to which the party would be entitled as owner of said shares, and also the amount of’ profits, if any, arising in any other way upon said eighty shares to which the plaintiff, as owner of said shares, is entitled,
The case was continued on that matter for a year, and at the end of the year the master reported,showing the amount : of dividends that had been earned and made on the stock dividends, and finding that in fact there had been no other profits than those included in these dividends. The year-before, upon the original finding, the petition in error had' been filed in the supreme court,and at the conclusion of this-report it was affirmed by the court. Another petition in error was then filed and the whole matter came into the court. One great contest in that matter was that he plaintiff had no right to bring an action in equity to enforce the transfer of that stock. That was the leading matter. Some-questions were raised in regard to the statute of limitations,, but those are immaterial here, and we pass them by. Now the court in deciding that case say, on page 332:
“But, the question arises, had Fink the right to demand the issue to him of certificates for the stock he had purchased from the residuary legatee, and what was his remedy, when the company refused to comply with the demand?"' Though holding no certificates as indicative of legal ownership, he was doubtless the equitable owner of the shares subscribed by Henry Blake. As such owner, seeking nob only a transfer to himself of the specific property — the-eighty shares — But other equitable relief in reference thereto, it came within the province of a court of equity to extend to him its aid, It is said, however, that courts of equity do not entertain jurisdiction for a specific performance on the sale of stock, where a compensation in damages would furnish a com'plete and adequate remedy. But courts- *365 of equity will not refuse to entertain jurisdiction, when, in, connection with the relief of decreeing a transfer of specific-property, a further and essential relief is asked which those-courts by their procedure are best adapted to furnish. Fink, as'equitable owner, is seeking not only an issue to-him of stock certificates, and to be recognized and treated-as a stockholder,but he prays for relief by way of account,. —running through many years, — of cash and stock dividends declared, of profits arising in any other manner upo» his stock, of the increase and gains of the company since ite> organization, of the disposition of such increase and gains,, and the shape in which they now stand — relief especially equitable in its character, and which he could not adequately obtain through an action at law for the recovery of damages. As far as his remedial rights are concerned, we do not think he should be treated as a delinquent subscriber to stock, and be debarred the privileges of a stockholder^, for, although neither Henry Blake, nor his administrator,, nor James H. Blake ever fully paid the original subscription, Fink, in that regard is chargeable with no default, hie* tender of the full amount due on the subscription having-been refused by the company.
“The practice of courts in the exercise of chancery powers, to decree the transfer of stock by corporations is settled' by well adjudged cases. In Hill v. Rockingham Bank, 44 N. H., 567, it was held that a bill in equity will lie to compel the delivery of certificates of stock to one who has already an equitable title to such stock,although a suit at law-might also be maintained tbprefor. In Cushman v. Thayer M, Co., 76 N. Y., 365, which was an action to compel the-corporation to transfer upon its books certain shares of Btock and to issue a new certificate, the court say: ‘The jurisdiction which courts of equity exercise over individuals, extends equally to acts done or omitted to bé done by private or municipal corpoiations. And the power to compel a transfer of specific property is a salutary one and should be exercised where such relief alone will work a> complete and ample remedy. ’ The same principle has bee» recognized in other cases in which courts in the exercise of: *366 ■a sound discretion have decreed a transfer of stock by corporations in connection with other equitable relief.”
The decision concludes by saying, “In our opinion there should be an affirmance of the judgment of the district dourt.” So that it appears that so tar as that decision is concerned, it sustains this aetion, at least in many of its aspects in regard to the third and fourth counts in the petition, as well as the first and second counts.
In State ex rel. v. Carpenter, 51 Ohio St., 83 is a decision by the supreme court where there had been an attempt made to compel the transfer of stock by action of mandamus, and the matter came up for hearing in the supreme court, where it was held that a writ of mandamus ordinarily was mot the appropriate remedy; but in discussing the matter, Judge Williams uses this language — he had been speaking in regard to an action for damages and he comes now to speak of other remedies:,
“Besides, ‘remedy in the ordinary course of the law,’ is mot confined to those actions which before the adoption of the civil code were actions at law, but embraces what were suits in equity as well and if, for any reason, an action for damages might prove inadequate for the full redress of the relator’s injury, we see no reason why they could not obtain that complete measure of relief in equity. It was held by this court, in Railroad Company v. Fink, 41 Ohio St., 321, that a suit in equity may be maintained against a corporation to compel it to issue a stock certificate to a subscriber, or his assignee, upon tender of the sum subscribed, Indeed, that remedy is well established, and is the one generally pursued in such cases, and also in cases where the transfer of stock on the books of the corporation, or a certificate of such transfer is sought. Cooke on Stock and Stockholders,sections bl and 391. In the last section cited, that author says the remedy by suit in equity is the most complete and most just one for compelling a corporation to register a transfer of stock, and is a remedy applicab e to •almost all cases arising under a refusal of a corporation to allow a registry of transfer. The case will be decided on ■equitable principles, however, and a transfer will not be decreed, if it involves bad faith. The relief usually demanded is in the alternative, being either for a registry of the *367 transfer, or damages in lieu thereof. The reasons which conduce to the holding that a suit in equity is the most satisfactory and complete remedy to accomplish the registration of transfers of stock, apply equally when the object sought is the issue of certificates originally. Mandamus is not well adapted to the trial of questions of fact or the determinations of controversies of a strictly private nature. Its office is rather to command and enforce the performance of those duties in which the public have some concern, and where .the right is clear, and does not depend upon a complication of disputed facts which must be settled from the conflicting testimony of witnesses.”
Bearing upon the rights of the stockholders in a company we have been cited in the argument of counsel to the Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189, the first and second paragraphs of the syllabi read as follows:
“(1) Injunction is the proper form of remedy to enforce the right of a stockholder in a private corporation, given by section 3254, Revised Statute, to inspect the books and records of the corporation.
“(2) The right to inspect does not depend upon the motive or purpose of the stockholder in demanding such inspection, and a petition which shows that the plaintiff is a stockholder, that ha has requested the defendant to allow him to inspect the books and records of the corporation, and fix a reasonable time for the same, which request has been refused, states a cause of action.”
I may say there was a very full argument before that court, and citation of authorities. In delivering the opinion of the court Judge Spear says:
‘1 It being determined that the action was properly brought, and that the court had jurisdiction,is the petition sufficient, or must the plaintiff, before he can have standing in court, set out what his reasons for desiring the inspection asked are, and show that he is actuated by proper motives, and in the pursuit of justifiable ends? Such is the contention of plaintiff in error. The statute is, section 3254: ‘and the books and records of such corporation shall at all reasonable times be open to the inspection of every stockholder.’ But it is insisted that this provision is not intended to enlarge *368 the right,but is a mere affirmation of the common law rule,, and that rule embodies many conditions, among them that: the stockholder must allege and prove that he is acting in* good faith. Without stopping to discuss the extent of and the limitations upon the rule as established by the common-law, (for the holdings are at variance upon it), we inquire,, what reason there is for saying that the intent of the legislature was to merely affirm the common law rule? If that', bad been all, why take the trouble to legislate on the subject at all? Is it not more reasonable to conclude that the-object was to get rid of all uncertainty and of various conditions, whatever they were, and establish the right by a-rule, clear, direct, simple and practically without qualification? The language is plain. The right given is clear. One condition, and one only is attached,viz,: that the right" can be exercised at reasonable times. Ordinarily the motive or purpose of the party who is in the exercise of, or is-about to exercise a clear legal right, is unimportant. Letts v. Kessler, 54 Ohio St., 73, and authorities cited; McDonald v. Smalley, 26 U.S., 620. A like rule prevails as to one’s-pursuits of an equitable remedy; Morris v. Tuthill, 72 N. Y., 575; Davis v. Flagg, 85 N J. Eq,, 491; Thompson on Corp., section 4412, and authorities cited. No reason is-apparent why the rule should not apply to the case at bar. We are of the opinion that where a suitor demands the enforcement of a clear right given him by law, whether the remedy be legal or equitable, his motive for such action is not a proper subject for judicial investigation. The petition stated a cause of action, and if supported by the evidence-warranted the granting of equitable relief.”
And then he discusses the form. Further on he says, on-page 200:
“We would add, however, that the rights of the plaintiff in this case are based upon a recognition of his standing as-an integral part of the corporation. The idea that the corporation is an entity distinct from the corporators who compose it, has been aptly characterized as ‘a nebulous fiction of thought.’ Much learning has been indulged in and' much space occupied by text writers and others in an effort to differentiate the essential character of a corporation from-that of its stockholders, and great ingenuity has been dis *369 'played in the argument, but it has been in main a fruitless, metaphysical discussion. For the purpose of description and in defining corporate rights and obligations, and characterizing corporate actions, the fiction that the corporation is an artificial person or entity,apart from its members,may ■be convenient and possibly useful, but in the opinion of the writer the argument favoring the essential separate entity ■of the corporation fails,and it is believed that the effort has resulted in misleading conceptions and in much confusion of thought upon the subject. When all has been said it remains that a corporation is not, in reality, a person or a thing distinct from its constituent parts, and the constituent parts are the stockholders, as much so in essence and in reality as the several partners are the constituent parts of the partnership. Stripped of misleading verbiage, the corporation is a device created by law whereby an aggregation ■of persons who may avail themselves of its privileges by organization, are permitted to use their property in a way different from that which is permitted to others who do not ■so organize, and with certain special advantage, among which are a measure as to personal liability for debts, and the power to perpetuate the organization, denied by the law to all others. With this conception of a corporation, it would seem to follow as matter of course, that the property ■of a corporation, although subject under some conditions to rights of creditors, is, in the last analysis,that of the stockholders, and that when one seeks an inspection of its books, records, or property, he is in reality but seeking an inspection of his own,and that this should be accorded fully, freely, and at all times when such inspection will not unreasonably inconvenience others who have like interests in and rights to the property,and that the attempt to unreasonably hamper such inspection, by officers, managers, or others, is ■an unjust exercise of power, and one which courts should not sanction. ”
Now in regard to the rights of the trustees of a corporation, I desire to read from Rouse, Trustee, v. Merchants’ National Bank, 46 Ohio St., 493. I read from page 501, commencing about the middle of the page:
“The extent of the powers expressly conferred on them are, to sue and to be sued, contract and be contracted with, *370 and acquire and convey such real and personal estate as may be necessary or convenient to carry into effect the objects of the incorporation, to make and use a common seal and to do all needful acts to carry into eff«ctthe objects for which they are created. It is obvious, that the corporate property, cannot with propriety be said to be owned by the corporation, in the sense of ownership as applied to property belonging to natural persons. The latter may, without restriction, acquire and dispose of property for any lawful purpose, while both the power of acquisition and disposition of the former, are-limited to the special objects already mentioned. The corporate property is in reality a fund set apart to be used only in the attainment of the objects for which the corporation was created, and. it cannot lawfully be diverted to any other purpose. As soon as acquired it becomes impressed with the character of a trust fund for that purpose, and the shareholder-or creditor may interpose to prevent its diversion from the objects of the incorporation, injurious to him. Taylor on Private Corporations, section 34 ”
The custody and control of the property, and the management of the business of the corporation, are confided to a board of directors chosen by the shareholders. Into the hands of these officers through whom alone corporations can act, the shareholders surrender their funds, and entrust the management of the affairs and property of the corporation to them. A relation of trust and confidence, therefore, arises between the stockholders and directors of a corporation, out of which grow the duties of the latter, to so administer the trust as will best promote the interests of the former, to pay them their appropriate dividends from time to time, and upon the termination of the corporation, to distribute to them their respective shares of tbe corporate property, after the payment of its debts and liabilities. These duties are eminently of a fiduciary nature, It is now so well established as to be no longer a subject of controversy, that the relation of trustee and cestui que trust subsists between the directors and shareholders. And, since the directors, as such trustees, represent and act for all the shareholders, they cannot lawfully favor any particular shareholder or class of shareholders but every authority and *371 power possessed by them, must be exercised for the benefit of all alike. Otherwise, no corporation could endure, If the directors and officers of a corporation were allowed, in the conduct of the business, and disposition of the property, to favor one or more shareholders to the detriment of' the others, the minority would be the prey of the majority;, for, it would then be within the power of the majority to combine and elect the officers, who in turn should manage; the whole business and apply the whole corporate property for the benefit of the majority, and thus practically confiscate the entire property interest of the minority. Corporations would thus become traps for the unwary,and legalized instruments of fraud. The doctrine that the directors are trustees for the shareholders, and for the equal benefit of all, it is obvious is essential to the existence of corporations.”
Mr. Morawetz, in his work on corporations, uses this language in section 403:
‘‘Even the majority have no right to direct the affairs of a corporation, except in accordance with the provisions -of its charter; for the powers of the majority are derived wholly from the agreement of the stockholders, as set out in the charter. And every individual stockholder has a right to stand upon bis contract and forbid any departure from its terms. It may, accordingly, be stated as a rule, that any. departure from the chartered purposes of a corporation is an injury to every individual stockholder, for which equity will under proper circumstances, provide a remedy.”
And he cites a host of authorities.
Now from these authorities to which I referred it seeing to us that the plaintiffs had the right to pursue their remedy in this case upon the third and fourth causes of action,, and to have the cause heard in this court, and upon the' showing made, as we found upon the former motion and hearing, it was necessary for them to have an examination of the books of the company for the purpose of ascertaining the manner in which the company, or the trustees, if you please, were proceeding in the exercise of their powers to manage this corporation, where it is apparent and is certain that there had been no.dividends made upon this stock since the time these defendants had bought into this company *372 •and had had control of it. When the matter came up on the original motion in the Kuhn v. Woolson Spice Co. case, 13 O. C. C., 547, the answer in it was offered in evidence •before us on the motion, and this clause is found:
“Defendants expressly say that it is not true that said Woolson Spice Company is now running at a loss, at the price at which it is now selling its products and the cost of running its factory and business, but on the contrary by reason of the large increase in its business, since said reduction, it is now being operated at a very large aggregate profit, being between five hundred and seven hundred and fifty dollars per day, and the directors of said company have from the stockholders the assurance that if desired, said stockholders, other than the plaintiffs will give a good and sufficient bond in any reasonable sum to said Woolson Spice Company, or to said plaintiffs, that the aggregate profits of the said Woolson Spice Company for the year 1897, will aggregate as much and the dividends on the stock will be as great as the average profits of said company for any number of years that the court may name, and these defendants hereby state that they are authorized to offer, and do offer, any such security as may be decreed adequate and sufficient to the plaintiff that the result of the business of said Woolson Spice Company for the year 1897 will be thus profitable and that at the end of the year the assets of the «aid company will after paying the dividends on the stock aforesaid, be more valuable than they are now.’’
I might stop here for a moment and say that that case ■came up for hearing at that time on a motion to suspend an order dissolving an injunction made by th<= court of common pleas. Now that case had been filed by Kuhn, who owned one share, aod by these plaintiffs, who owned sixty-two shares,soon after the purchase had been made, for the purpose of restraining *he defendant company from selling coffee at a lower rate than it had before. It was said they had lowered the price of coffee about two cents a pound. Upon that hearing and upon this answer and the allegations and statements made at the time, the court made an order suspending the order dissolving the injunction, and in delivering the opinion making that order, Judge King says, on page 560:
*373 ■‘It is claimed that defendants should be enjoined from selling their products at such unprofitable price. We are not satisfied from the evidence that they are making such •sales. The evidence taken after the business had been operated under its new management for about three months tends to show that the corporation is doing business at a profit, but if it were not, for the reasons already given, the •court will not interfere at the suit of a competitor in business to restrain the directors from exercising their judgment in the matter of prices. For aught that appears the reduction in price is a temporary expedient, having for its purpose an enlargement of tbe trade and business and may, if it does not already, ultimately result in increased profits. .However that question is one in the control of the directors, •and a court of equity cannot interfere with their discretion unless the proof clearly shows an abuse of it.”
We did in that case hold and cited authorities to show, that under the facts of the case as they were at that time, inasmuch as those plaintiffs were members of a co-partnership that was a rival of defendant corporation, and as we thought at that time were seeking to control the defendant corporation in the sale of its products for the purpose of protecting themselves,that is,protecting their own firm,that that was one reason why the order should be suspended, But a large element in that decision was, that at that time the defendant company showed that in the short time it had control — and we could not find the fact otherwise than as it claimed — it was making a profit and asserted it would make large profits the coming year, and therefore at that time that order was made. That case is still pending,never has been tried. Since that time, however, the decision has been made by the supreme court that I read in The Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189.
It would seem,going back to these various decisions, that the prima facie rule of law is that these plaintiffs may maintain this action; that they had a right to be heard upon the averments that had been made,not only in the first and second, but also in the third and fourth causes of action. They had a right to inquire why it was that this corporation, which had been so profitable and successful for the year 1896, when the Havemeyers obtained possession of it, had *374 not from that time to this made or declared one cent of dividends. The averments that were set out in this petition are sufficient we think to invoke the action of a court of equity to make inquiry into the condition of the affairs of the company to the end that the rights of these stockholders may be protected.
Under the decisions I have read, these stockholders, though owning only sixty-three out of eighteen hundred shares, have rights that are just as sacred as the right of the seventeen hundred and thirty seven shares of stock, or the owners of those shares of stock, and the court is bound to protect them; and hence we made the order that we did.
Now I come t.o the question of the remedy. It is said here, and it was incidentally argued here, that the court had no authority to make this order in this form, and if it had authority, it has no right to make an order on these parties to show cause or to punish them as for contempt of court; and that brings us to the history of the contempt proceedings and this section of the statutes, 5290. It is claimed that under this section of the statutes, the remedy provided in said section 5290, Revised Statutes, is the only remedy given, and that the right of inspection can be used only in a jury case. Now I will read this section (5290) of the statutes:
“Either party, or his attorney, may also demand of the adverse party an inspection and copy, or permission to take a copy, of a book, paper, or document in his possession, or under his control, containing evidence relating to the merits of the action or defense, which demand shall be in writing and shall specify the book, paper or documentwith sufficient particularity to enable the other party to distinguish it.”
Now,as we said in delivering the opinion upon the motion, that is not confined to any court nor to any class of cases. It is broad and universal; it seems to be applicable to all cases that aie to be tried by the court, Then it is further provided by the statute:
“If compliance with the demand within four days be refused, the court or judge may, on motion, and notice to the adverse party, order the adverse party to give the other within the time specified an inspection and copy, or permis *375 sion to take a copy, of such book, paper or document; and on failure to comply with such order the court may exclude the paper or document from being given in evidence or, if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party, by affidavit, alleges it to be; but this section shall not be construed to prevent a party from compelling another to produce any book, paper, or document, when he is examined as a witness.”
I confess I have not always been clear in my mind as to what the idea was in the mind of the persons who drew that act. Now this section, or a substantial part of it, is a part of the code as it was drawn in 1853, 51 O. L., 116, section 360,and I think it is almost verbatim of the present section 5290 of the code; the original code contained three sections, one was that a party may be required to admit a paper to be genuine; then comes this section. However, I will read section 360:
‘‘Either party or his attorney,may demand of the adverse party, an inspection and copy or permission to take a copy of a book, paper or document, in Mb possession or under his control, containing evidence relating to the merits of the action or defense therein. Such demand shall be in writing, specifying the book, paper or document,with sufficient particularity to enable the other party to distinguish it, and, if compliance with the demand within four days, be refused, the court or judge,on motion and notice to the adverse party, may, in their discretion,order the adverse party to give the other within a specified time, an inspection and copy, or permission to take a copy of such book, paper or document; and on failure to comply with such order, the court may exclude the paper or document from being given in evidence or if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party by affidavit alleges it to be. This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness.”
The next section, 361, provided as the section does now, requiring a party to deliver any paper he intends to offer in evidence. Now I should say the proceedings for contempt were not in the code as they are at the present time.
*376 As I have said, I have been sometimes in a quandary to know what was in the minds of the parties who drew section 360 of the code. There was a book, published at one time by the code commissioners, giving reasons why certain provisions were adopted, but I think that book has been lost; at least I know of no copy now. It seems to us that the code commissioners proceeded upon the assumption that th<r court in equity cases had the right to enforce the orders that it made in respect to these provisions.
Now perhaps it is not very material, but I will say that the provisions in regard to contempts of court that were in force at that time, were enacted in 1834. See 32 O. L, (1834), 18. The act there provided “That the power of the several courts of the state of Ohio to issue attachments and inflict summary punishments for contempts of court shall not be construed to extend to any cases except to the misbehavior of any person or persons in the presence of the said courts,or so near thereto as to obstruct the administration of justice; the misbehavior of any of the officers of the said courts in their official transactions; and the disobedience or resistance by any officer of the said court, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree, or command of said courts, which charge shall be stated in writing, and the accused shall be heard in his defense by himself or counsel.”
The second section provided that if any person or persons shall corruptly or by threats or force endeavor to influence, intimidate or impede any juror, witness, or officer, in any court of this state in the discharge of his duty, or shall corruptly, or by threats, or force, obstruct or impede the administration of justice, such person shall be liable to prosecution therefor by indictment before the court of common pleas of the proper county. So that contempts were, so far as the statute was concerned, provided for in the first section, and that law continued in force until the revision of the code in 1878, when the chapter governing the practice in contempts became a part of the code. 25 O. L., 745. The second section was repealed by the revision of the criminal laws in 1877, But in that revision, as has been cited by counsel, after dividing the first section, making two sections of it, practically, and after adding quite a number of *377 sections in regard to proceedings, punishments, etc., relating to contempts of court, section 5650, Revised Statutes, was inserted, which provides that “This chapter is not cumulative to the provisions of division three, chapter three of' this title, nor to chapter five, title three of this part, but famishes a remedy in cases not thereby provided for. ’' We-have had considerable discussion on this question, and it has seemed to us — though we do not think it necessary to-the decision of this case — that this provision in regard to-the statute being cumulative should apply to those sections' of the statute in chapter 3, which provide for a remedy for contempt in certain cases in respect to obtaining the testimony of witnesses, etc.; that is, this statute shall not be cumulative in proceedings for contempts that are provided for in the aforesaid chapter 3.
Now I will say here in regard to another matter that has-been argued to considerable extent, that the statute in regard to interrogatories to be attached to pleadings, was not in the original code, was no part of it, nor, as I have said before, was the section in regard to discovery. The statute' providing for these was passed March 6, 1857. 54 O. L., 23. But it is sufficient to say that the section in regard to interrogatories was passed, and the first two sections of the' act are made sections 5099, 5100 and 5101, Revised Statute. Section 5099 provides that a party may annex interrogatories to his pleadings, etc. Section 5100 provides' that when annexed they shall be answered within the time limited, etc. Section 5101 provides that: “Answers to interrogatories may be enforced by non-suit, judgment by default, or by attachment,as the justice of the case may require; and. on the trial, such answers, so far as they contain competent testimony on the issue or issues made, may be used by either party..” The making answer, it will be seen, may be enforced by attachment, Those sections were-passed at the same time, and are a part of the act passed in regard to discovery. That section of the act in relation to-discovery provides that a party desiring information -to enable him to commence an action may file his petition and attach interrogatories to be answered by the defendant,etc.; and I apprehend that the provisions of the first section in regard to enforcing answers would apply to the section im *378 regard to discovery, they being part of the same act and touching the same subject matter. It was the intention that these answers should be enforced by attachment, the only difference being that in the last case the petition is led for the purpose of obtaining evidence to commence the suit, while in the other the interrogatories are attached to the petition, to obtain evidence for use upon the trial.
I have gone through these provisions because they have been argued, and because they seem to throw some light on the matters that have been under discussion; but it seems to us that the supreme court has now made a decision that is declaratory of the law as it exists to-day, and which covers this case, and is sufficient warrant for the action we propose to take. In Hale v. State, 55 Ohio St., 210, the court held:
“The general assembly is without authority to abridge the power of a court created by the constitution to punish contempts summarily, such power being inherent and necessary to the exercise of judicial functions; and sections 6906 and 6907, Revised Statute,' will not be so construed as to impute to the general assembly an intention to abridge such power. ’’
In Baldwin v. State, 11 Ohio St., 681, the court held that punishment could not be inflicted in that case under the first section of the act of 1834, holding that it must be under the second section by indictment. But in the Hale v. State, supra, the court say, in the second paragraph of the syllabi:
“Removing a witness from the county of his residence where he ia under subpoena to attend upon the trial of a cause pending, with the purpose and effect of preventing his appearance upon the day of trial, being a wrongful act which obstructs the administration of justice, is a contempt of court. Baldwin v. The State, 11 Ohio St., 681, over, ruled.”
I shall not take the trouble to read this decision at length; I shall only read a clause, on page 213:
“The difference between the jurisdiction of courts, and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitution and of statutes *379 enacted in the exercise of legislative authority, That,- however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any .sense ' upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised.”
It was suggested that this decision was not in accordance with the general rule of decisions of other states. Perhaps it was intended to mean some particular phase of the decision. In 86 L. R. A., 254-, appears Hale v. State, supra, and in a foot note is the following:-
‘‘In Georgia the constitution declares that the power to punish for contempt is limited, and requires legislation to prescribe the limits' (see Bill of Rights, par. 20), Harrell v. Word, 54 Ga., 649.
‘‘But in most states the question depends on general principles and general provisions of the constitution. The conclusions reached by nearly all the courts which have decided the question are in harmony with that reached by the supreme court of Ohio in the main case of Hale v. State.”
.‘‘The general declaration that the power to punish for contempts is inherent in a court is made in many cases” (citing a very large number of cases).
It is sufficient for us, however,that the supreme court has made this decision, and it seems to us, in making the statement that this power applies to securing the attendance of witnesses, makes it also clearly applicable to cases under section 5290, Revised Statutes, because if it becomes essential to require inspection or the production of papers and documents for the purpose of having the case heard and arriving at a just and correct conclusion regarding the facts of the case,it is just as essential that it be done as it 'is that a living witness should be produced and heard upon the stand. We cannot conceive of any reason why it would be applicable in one case and not be applicable in the other.
*380 For these reasons we have come to the conclusion that under the decision in Hale v. State, 55 Ohio St., 210, this court has the right, independent of these sections that have been referred to, to proceed as for contempt for disobedience on the part of the parties on the order made in pursuance of that section of the statute in this case.
We are of opinion, or at least as at present advised, that the court did not err in the original order it made. We are clear, as we have already said, that the court has the right to proceed, for disobedience of that ord3r, as for a contempt of court, against the parties who disobey.
Now in regard to the notices that have been served on Mr. Brigham and the action taken in regard to him, for he is the only party whom we shall consider at the present time, an application was made to him, and a demand under the order of the court was made upon him, in regard to an examination of the books.- Mr. Brigham,as appears by the testimony on the examination before us at the time the motion was heard, is the secretary of the company and its acting manager, and as such he has charge'of the books relating to the transfers of stock, and. also has general charge of all the books of the company. He further testified and designated the particular character of all the books kept by the defendant company, and that the company kept such books as are usually kept by mercantile establishments. It seems to us then,and we can only repeat that it appears to us now, that an examination of these books is necessary for this party plaintiff to obtain the facts that will enable him to proceed in the hearing of this case.
If those books are kept as merchants ordinarily keep their books, they should contain a very full history of all the transactions that are had by the company, and the parties should be enabled to obtain from' them the amount of sales, the prices received, the amount of purchases and the prices that are paid for the purchases; and generally to obtain that knowledge which will enable tham to know whether the company is in fact making a profit, and if it has made a profit, what has become of the money, what they are doing with it, and whether they are keeping it for lawful purposes, or whether they are using it for purposes which the law will not sanction. Plaintiffs have the right as a party to demand, *381 at the same time, if profits are made', that they shall be awarded to them, that dividends shall be declared. It is true, of course, that the law permits a board of directors in their discretion to keep money on hand for specific or certain purposes, but the general rule is that the stockholders should have a dividend from the profits. ■
As I have already read in Rouse v. Merchants’ Bank, supra, the directors are trustees for the stockholders and for each of them. The object and purpose of a corporation is to make money. It is a corporation for profit. It is the duty of these directors, as trustees, to so use the capital of the company, so far as they can, for the purpose of producing profits and making profits for the stockholders; if they fail to do that, and if they abuse their trust in that respect, we have no doubt ourselves, as at present advised at least,, of the powers of a court of chancery to call them to account.
Now, when the matter was before us three years ago, the company was then, as it appeared, experimenting, and it was declared, and we so found the fact to be, that they were then making money. It now appears that they have not made any money which they are willing to divide as profits, and, so far as we can gather from their assertions, there is no money that can practically be available for that purpose.
We think we clearly have the right to make an order under this section of the statutes that these parties shall have an examination of.those books, so far as will enable them to obtain the facts, and evidence of facts, that are necessary for the purpose of enabling the court to pass upon the questions that aro raised in the pleadings. It may turn out.in the end, that the plaintiffs are all wrong and the defendants all right, but under the allegations of the petition and under this section of the statutes the plaintiffs have the right to invoke the action of a court of equity, and the court has the power to take steps proper to obtain the necessary evidence.
Some question was made in regard to the interpretation of the order. We will say in respect to that, as we understand it and as we understood it at the time the order was before us — and at the time some interlineations were made by my brother Parker and approved by the court — if there *382 is any question in regard to any book or paper as to whether it is proper for these parties to see it or inspect it,that matter should be brought before this court, or before the judges of this court, and that duty would devolve upon the party who made the objection to the examination.
Now in regard to the company, in regard to the defendants other than Mr. Brigham, we shall take no action today. It appears that Mr. Brigham is the party who is placed in the possession of these books, acting as secretary and general manager in the management of the company — > he is the acting manager of the concern. The principal directors are non-residents of the state and are absent therefrom so far as we know; and he is the only party that is here in possession of the books and papers, so far as it appears from the evidence before us. It is evident to us that he is acting under the orders of his superior officers, and the directors of the company.
It is clear to us from the evidence, and we think the arguments proceeded upon the line, that these persons do not desire and are determined that those plaintiffs shall not become members of that corporation or have their stock registered on its books. We think under the decision of the supreme court that we have read, and under the principles laid down by that court and which are to be followed by us, that this court has the right to enforce its orders in regard to an examination of the books,by whatever power it has at hand,
We have endeavored, and shall endeavor, to proceed in a conservative manner, but we shall proceed with firmness and determination to enforce the orders of this court, and see that the orders of the court are respected and obeyed by all persons who are within the jurisdiction of the court.
We proceed in this matter upon the principles laid down in section 8646, Revised Statutes, which provides:
“When the -contempt consists in the omission to do an act which is yet in the power of the accused to perform, he may be imprisoned until he performs it.”
And the order of the court will be that Mr. Brigham be confined in jail until such time as he obeys the order of the court.
It was suggested that the parties desired to take this *383 •case to the supreme court by petition in error, for the purpose of raising the questions that have been raised before us in regard to the power of this court to make any order at all, under section 5290. We will give you until March 5th to file a petition in error in the supreme court and obtain a hearing on motion for a suspension of our order in the case.